UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SANDRA A. PACE

VERSUS

RANDY K. POPE, AND
LIVINGSTON PARISH
SCHOOL BOARD

CIVIL ACTION

NO. 08-234-BAJ-DLD

## RULING AND ORDER

This matter is before the Court pursuant to a Renewed Motion for Judgment as a Matter of Law under FRCP Rule 50(b), or alternatively, Motion for a New Trial filed by Defendant, Livingston Parish School Board ("Defendant"). (doc. 49). Plaintiff, Sandra A. Pace ("Plaintiff"), opposes Defendant's Motion. (doc. 50). Based on the following, Defendant's Renewed Motion for Judgment as a Matter of Law is **GRANTED**.

## BACKGROUND

This suit was brought under the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331. The case was tried to a seven person jury over two days, March 4-5, 2013, on claims of gender and racial discrimination under 42 U.S.C. 2000e, et seq. Upon the trial's conclusion, the jury rendered a verdict in favor of Plaintiff as to her claim of racial discrimination.

During trial, Defendant moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiff's case for failure to present a *prima facie* case of

gender and racial discrimination. (Tr. Vol I, 244, March 4, 2013). The Court dismissed the gender discrimination claim (Tr. Vol I, 257-260, March 4, 2013) on the grounds that no evidence of gender discrimination was presented. The Court denied, at that time, the Motion with respect to Plaintiff's racial discrimination claim. *Id.*

Defendant renewed its Rule 50 motion at the close of its evidence on the grounds that it had put forward sufficient, credible evidence that the employment action at issue was taken for race neutral nondiscriminatory reasons. (Tr. Vol II, 31-34, March 5, 2013). The Court deferred a ruling on the Motion and allowed the issue to be considered by the jury. (Tr. Vol II, 37-38, March 5, 2013).

Following the jury's verdict, the Court allowed Defendant to renew its Rule 50 motion upon the filing of the appropriate pleadings within 28 days after trial. (Tr. Vol II, 109-110, March 5, 2013).

## I. Uncontested Facts

Pursuant to a joint statement of undisputed material facts, certain material facts were deemed admitted during trial. (Tr. Vol II, 83-85, March 5, 2013). The following stipulations and statements are the uncontested facts submitted by the parties:

1. Sandra A. Pace was born July 5, 1946. She is 66.5 years old.
2. Sandra A. Pace is a Caucasian female.
3. Sandra A. Pace's life expectancy is 18.7 years.

4. Sandra A. Pace's work life expectancy is 5.9 years.

5. Sandra A. Pace began her employment at the Livingston Parish School Board on March 4, 1985.

6. At all pertinent times, Sandra A. Pace has remained employed at the Livingston Parish School Board (LPSB) since March 4, 1985.

7. Sandra A. Pace became the Purchasing Agent on November 1, 1990, and Sandra A. Pace has remained employed as the Purchasing Agent of the Livingston Parish School Board until the present time.

8. On June 29, 2006, the Livingston Parish School Board created a new position titled "Warehouse Manager."

9. On July 7, 2006, Sandra A. Pace applied for the position of Warehouse Manager in response to the School Board's advertisement for applications to fill the newly created position.

10. On September 7, 2006, the Livingston Parish School Board voted to appoint Ronald Colar (a/k/a "Ron Colar"), an African American male, to the Warehouse Manager position.

11. At all times pertinent hereto, Randy K. Pope was Parish Superintendent for the Livingston Parish School System.

12. At all times pertinent hereto, David A. Tate was a member of the Livingston Parish School Board.

13. At all times pertinent hereto, Julius Prokop III was a member of the Livingston Parish School Board.

14.     The Warehouse Manager position, had Sandra Pace been appointed, would have been a promotion and increase in salary.

## II.     Contested Facts

The following statements were contested facts among the parties during the trial:

1.  What were the objective qualifications established by the School Board for the Warehouse Manager position?

2.  Whether Sandra A. Pace lacked one or more of the objective qualifications for the Warehouse Manager position.

3.  The circumstances surrounding and content of any conversations between Randy K. Pope and School Board Members concerning the appointment of the Warehouse Manager position.

4.  Whether impermissible considerations of race animated the appointment of Ronald Colar to the Warehouse.

5.  The facts and circumstances surrounding the applications, interviews, and recommendation of the School Board's administrative selection committee.

6.  Whether prior to the selection of Ronald Colar to the Warehouse Manager position, Randy K. Pope expressed a desire to have an African American serve in the position.  Similarly, whether Pope allegedly expressed this desire because of pressure from certain African American community leaders in Livingston Parish.

## ANALYSIS

The grant of a Rule 50 motion for judgment as a matter of law is well-founded if there is "no legally sufficient basis for a reasonable jury to find for [a] party on [an] issue" and the claim in question "cannot, under the controlling law, be maintained ... without a favorable finding on that issue." Fed. R. Civ. P. 50(a). The standard of review for Rule 50 motions is found in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969)(en banc):

> [T]he Court should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.

*Id.* at 374. The Fifth Circuit has further stated that "if there is substantial evidence to support the verdict, the challenge to it must be denied.... 'Substantial evidence' means evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions..." *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 174 (5th Cir. 1997) (citing *Boeing*, 411 F.2d at 374-75).

In addition to a Rule 50 motion, "[a movant] may alternatively request a new trial or join a motion for a new trial under Rule 59." Fed. R. Civ. P. 50(b). However, the standard for granting a Rule 59 motion is less stringent than that

necessary to grant a judgment as a matter of law. A new trial may be granted if the court finds that the verdict is against the great weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A district court has "sound discretion" to grant or deny new trial motions. *See Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

I. *Prima Facie* **Case of Title VII Discrimination**

Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to discriminate against an employee because of her sex. *See* 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e(k). An employee can prove discrimination through direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.1994).

Plaintiff alleged circumstantial evidence of racial discrimination in connection with the selection of Ron Colar to the position of Warehouse Manager. The Fifth Circuit has held that "where the plaintiff offers circumstantial evidence, the *McDonnell Douglas-Burdine* framework is required." *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179-80 (5th Cir. 1999). Under this framework, "the plaintiff must establish a prima facie case of discrimination, which, if established, raises a presumption of discrimination." *Id.* Next, the

6

employer must then produce a legitimate, nondiscriminatory reason for the adverse employment decision. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). Finally, "if the defendant presents such a reason, then the inference disappears, and the plaintiff must offer evidence that the proffered reason is a pretext for racial discrimination." *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001).

Here, the Court finds that even when considering all of the evidence in the light most favorable to Plaintiff, she failed to establish a *prima facie* case of racial discrimination. Specifically, Plaintiff failed to show at trial that she satisfied each of the objective, stated qualifications for the job.

The Court notes that to establish a *prima facie* case of discrimination, Plaintiff must show, by a preponderance of the evidence, the following: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, she was treated less favorably than other similarly situated employees outside the protected class. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

Defendant did not dispute that Plaintiff is a member of a protected class, that she suffered an adverse employment action, or that the position was awarded to someone outside of Plaintiff's protected class. Rather, Defendant argued that Plaintiff could not establish her *prima facie* case because there was

no dispute of material fact as to whether she was qualified for the position according to the objective, stated qualifications for the job.

At trial, Defendant produced evidence to show that the published qualifications for the Warehouse Manager position were, "High School Graduate or GED equivalent, five (5) years warehouse experience, and a valid Louisiana driver's license." (Def.'s Ex. 6; Tr. Vol I, 279, March 4, 2013). Defendant averred that Plaintiff lacked the requisite five (5) years warehouse experience.

At trial, Plaintiff argued several points aimed to militate in favor of a finding that she possessed the requisite experience. First, Plaintiff testified that "her lengthy experience as Purchasing Agent" provided her with intimate knowledge of warehouse logistics. (Tr. Vol I, 207, March 4, 2013).

Second, Plaintiff presented the deposition of Brent Bencaz, who was one of the three LPSB officials who conducted interviews of selected applicants for the Warehouse Manager position.[1] Bencaz, through deposition, testified that Plaintiff Pace was familiar with all aspects of the warehouse, and that Pace's work experience, in his opinion, met the requisite five years work experience outlined in the job posting. (Pl.'s Ex. 24, at 38-39).

Plaintiff also cites to the testimony of the Business Manager in support of her claim. However, the Court finds that Plaintiff's reliance on the testimony of Terry Hughes, the Business Manager for the Livingston Parish School Board, is unfounded. While Plaintiff argues that Hughes testified that she believes Pace

---

[1] As part of the warehouse selection process, three LPSB officials conducted interviews and, thereafter, made a recommendation to the Business Manager regarding the candidates' qualifications.

8

met all of the **job criteria** and was capable of working as the warehouse manager, she actually testified to the contrary with regard to the **job qualifications**. Hughes testified that all seven candidates met the qualifications set forth in the job description *except Ms. Pace*, who did not have five years warehouse experience (Tr. Vol I, 283, March 4, 2013).

Defendant, in contrast, presented testimony that Plaintiff's work experience did not constitute "warehouse experience" within the meaning of the position requirement. According to Defendant, "five years warehouse experience" meant actual work in the warehouse. (Tr. Vol I, 244-248, March 4, 2013). Defendant further argued that although Mr. Bencaz testified that Plaintiff was qualified, he was not in a position of authority to make this assessment and the interviewer's opinion was only advisory to that of the Business Manager. (Tr. Vol I, 247, March 4, 2013).

Similar to the predicament at the aforementioned trial, both Plaintiff and Defendant have placed the Court in the unenviable position of attempting to second guess the school board relative to the meaning of the term. Trial jurors are required to confine themselves to the objective qualifications set forth by an employer.[2] In this circumstance, the Court is required to determine the meaning of the five (5) year job experience requirement set forth by the School Board.

---

[2] *See Veillard v. Spring House Leasing, Inc.*, CIV. A. 93-2144, 1994 WL 376912 (E.D. Pa. July 18, 1994) (holding that plaintiffs' motion for new trial must be denied and the jury verdict upheld when the jury could have reasonably found that the plaintiffs failed to show that they satisfied an employer's objective job qualification; specifically, whether plaintiffs were proficient in using a new computerized fueling equipment).

Plaintiff asserts that when the School Board advertised "five years warehouse experience," it intended to consider five years *or equivalent* experience. However, Plaintiff produced no evidence at trial to support this interpretation of the expressed term featured in the advertisement. Nothing at trial, other than the non-binding, subjective opinion of one interviewer, Mr. Bencaz, even suggested that the job posting allowed "five years warehouse experience *or equivalent*." The Court reaches this conclusion for three reasons.

First and foremost, the School Board job advertisement stated "five years experience." The Court concludes that had the School Board intended "five years **or equivalent**" the job posting would have included this information in the job specifications. (Def.'s Ex. 6; Tr. Vol I, 279, March 4, 2013). There was no such evidence or testimony presented at trial to suggest that the Business Manager or the School Board ever intended to use an equivalency determination for this qualification. Plaintiff presented no support in law or in fact for **her** use of the phrase.

Second, as previously noted, the business manager specifically testified that all seven candidates met the qualifications set forth in the job description except Ms. Pace, who did not have five years warehouse experience, and that this was a factor in the decision. (Tr. Vol I, 283-295, March 4, 2013). This suggests that despite being able to potentially perform the job criteria, as was principally argued by Plaintiff's counsel, Plaintiff was, in fact, actually lacking in a

measurable job qualification. Additionally, this qualification was met by the other six candidates.

Third, the Court finds that Defendant's reliance on the case of *Johnson v. Louisiana*[3] is well founded. The issue in *Johnson* was whether the district court erred when it determined that "because the plaintiffs did not show themselves to be qualified as measured by the objective requirements, all other considerations were irrelevant." *Johnson*, 351 F.3d at 623. The Fifth Circuit held that the district court erred by applying objective requirements to the plaintiffs without considering whether the requirements were equally applied to the employees actually hired. *Id.* at 624. The court declined to reverse the district court's summary judgment ruling, however, further holding that it was the plaintiffs' burden to show that they were qualified in accordance with the employer's objective qualifications. *Id.* at 625.

Here, the testimony at trial revealed that the objective qualifications, including that of five (5) years warehouse experience, were equally applied to all seven candidates. Each of the other six candidates had the requisite warehouse experience. Additionally, testimony at trial showed that the candidate that was actually hired, Ronald Colar, had approximately fifteen years warehouse experience as a warehouseman in compliance with the School Board's specifications. (Tr. Vol I, 263-269, 287 March 4, 2013). Because Plaintiff failed

---

[3] *Johnson v. Louisiana*, 351 F.3d 616 (5th Cir. 2003).

to show by a preponderance of the evidence that she was qualified for the position, as measured by the objective standards applied to the candidate actually hired, she failed to establish a *prima facie* case.

Accordingly, the Court finds that because Plaintiff failed to establish a *prima facie* case of racial discrimination at trial, Defendant's Renewed Motion for Judgment as a Matter of Law must be granted.

Nevertheless, in the interest of clarity and thoroughness, the Court proceeds to the next level of the *McDonnell* analysis to discuss whether the employer produced, at trial, a legitimate nondiscriminatory reason for the adverse employment decision.

## II.   Pretextual Reasons for the Employment Decision

Here, assuming *arguendo*, even if Plaintiff had sufficiently asserted a *prima facie* case of discrimination the testimony and evidence at trial did not establish that Defendant's arguments in support of the employment decision are merely pretextual. Defendant asserted a number of non-discriminatory motives for its employment decision, and Plaintiff failed to rebut those reasons at trial.

First, although Plaintiff argued that "her lengthy experience as purchasing agent" provided her with intimate knowledge of warehouse logistics (Tr. Vol I, 207, March 4, 2013), Defendant asserts that this did not constitute "warehouse experience" within the meaning of the position requirement (Tr. Vol I, 244-248, March 4, 2013).

Alternatively, Defendant presented substantial evidence at trial that the selected applicant had approximately fifteen years experience as a "warehouseman," which involved working within the warehouse. (Tr. Vol I, 263-269, 287 March 4, 2013). The Business Manager testified that, in designing the Warehouse Manager position, extensive warehouse experience was taken into account because of the size of the warehouse and the size of the school system. (Tr. Vol I, 274, March 4, 2013). Plaintiff and Defendant dispute whether working in the warehouse is required for actual "warehouse experience," but, as previously noted, the Court may rely on the objective qualifications set forth by the employer as long as they are applied equally across all candidates.

Additionally, Defendant also pointed to other reasons for Colar's selection over Plaintiff at trial. The Business Manager cited his reputation for being hard-working and his "proven track record" of doing well in the warehouse. (Tr. Vol I, 326, March 4, 2013).

Second, Plaintiff's evidence to support racial animus was inconsistent and unfounded. For example, the testimony of former LPSB Board Member, David Tate, did not support the contention that his vote was based upon race. Tate's testimony was that, prior to the selection of a Warehouse Manager, the Superintendant brought to his attention that a vote for Pace could affect the School Board President election. Specifically, it was suggested that Pace's selection as Warehouse Manager could lead to more African American support

for Malcolm Sibley for School Board President. (Tr. Vol I, 229-230, March 4, 2013).

Conversely, Colar's selection could lead to more African American support for Clint Mitchell, a friend of Tate's. *Id.* Tate never testified that the issue of race influenced his vote in any way. In fact, Tate specifically testified that he didn't recall whether the election for School Board President affected his decision. He also testified that he did not remember who he voted for or why. *Id.*

Similarly, the testimony of former LPSB member, Julius Prokop, did not support the contention that his vote was based upon race. Prokop testified that when he received a phone call from the Superintendent a day or two before the Board's selection of a Warehouse Manager, he cut short his conversation with the Superintendent about the matter. (Tr. Vol I, 234, March 4, 2013). Prokop claimed he cut the conversation short because he had already decided how he would vote. *Id.* at 235-37. Clearly, any such conversation had no influence on his ultimate decision and vote.

In fact, Prokop testified that the Superintendant likely called him to develop his own strategies for how to handle the results of the vote, after the selection was made. *Id.* Prokop stated that this was his opinion based on what he knows of the School Board. Prokop further testified that he did not get the impression that the Superintendant was attempting to influence his vote in any way. *Id.* at 236-39.

Essentially, the testimony of Tate and Prokop, when read together, reveal that the issue of race was raised prior to the vote for Warehouse Manager. However, neither Board Member ever testified that the issue of race influenced their vote for Warehouse Manager in any way. Additionally, neither Board Member testified that the LPSB Superintendant influenced their vote. Plaintiff principally argues that, because the issue of race was raised prior to the vote, race was necessarily a motivating factor in each Board Member's decision. However, the testimony at trial did not support this assumption, but in fact was contradicted by the evidence.

The Court recognizes that a "jury's verdict is afforded great deference." *Bryant v. Compass Grp. USA Inc.,* 413 F.3d 471, 475 (5th Cir. 2005). In this case, the Court is loath to overturn a jury verdict; however, the Court finds no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff. Fed.R. Civ.P.50(a). Accordingly, the Court finds that even if, assuming *arguendo*, Plaintiff had sufficiently asserted a *prima facie* case of discrimination, the testimony and evidence at trial did not establish that Defendant's actions, in support of the employment decision, are merely pretextual. Therefore, Defendant's Renewed Motion for Judgment as a Matter of Law must be granted.[4]

---

[4] The Court denies Defendant's alternative Motion for a New Trial as moot for the legal and factual conclusions set forth in this ruling.

## CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Judgment as a Matter of Law (doc. 49) is hereby **GRANTED**. Defendant's alternative, Motion for a New Trial is hereby **DENIED** as moot.

Baton Rouge, Louisiana, July 31, 2013.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA